via Zoom, United States v. Jones, numbers 20-2765 and 20-2766, Mr. Coughlin and Ms. Martin. And take your time setting up, we're in no urgency. If you're ready. Good afternoon, Richard Coughlin, Federal Public Defender for the District of New Jersey for Truman Jones. And with the court's permission, I'd like to reserve three minutes of time. Thank you. Your Honor, the Supreme Court has said repeatedly that procedural strictness is a fundamental part of the Speedy Trial Act. There's flexibility built into the into the act to allow district court judges to manage their calendars, to manage the different events that occur in cases and the unpredictable events that occur. In this case, there was no procedural strictness in terms of either the application, enforcement or assessment of the act. I have two to practical concerns or issues for me. And if I could address them, one is a factual one. There was a motion made for a severance. And I guess your client joined that motion on November 30th. Is that correct? Or suggested on November 30th that you wanted to hold the motion for your client in abeyance until you got Jenks material. Is that correct? That's correct, Your Honor. And then about two weeks later, the court denied the motion of the co-defendant for severance. At that point in time, as defense counsel, it would seem you would say, I still want to hold my motion in abeyance until I get the Jenks material. Or why don't you just rule on my motion because it appears by denying the co-defendant's motion for a severance, you have in effect denied my client's motion and let's just get on with it. But nothing was done at that time. Why? I don't know why. I think because there was a lack of attention to the Speedy Trial Act and what it permits and what it requires. It doesn't allow for a motion to be held in abeyance. A severance in federal court, there is a presumption that jointly charged defendants in a criminal conspiracy will be tried together. The judge denied the co-defendant's motion and under Henderson and Bloat and Zedner, the court has, the Speedy Trial Act provides that there is a continuance, an exclusion of time until a motion is properly decided. But my point is, if I'm the district judge in what I just related to you, it would seem that perhaps I'm saying to myself, okay, I can rule on the co-defendant, but I've been asked to hold up in ruling on Mr. Jones because he says he's asked me to do so until he can collect additional materials. And maybe the court should have asked counsel what do you want to do. But nobody piped up here, and I'm just trying to figure out why nothing was done, because it's easy in that context to say if you're a district judge, okay, I should continue to exclude that time, even though in the ordinary circumstance I might not be inclined to do so. And I don't think actually that that's permissible. I think that's a misapplication and a misreading of the statute. I think that what it provides is you've got an opportunity to have a hearing or other prompt disposition. Once you've had a hearing, you've got 30 days to decide. Well, you're right that it's a pretty straightforward statute, but there are factors to be applied in determining whether or not any dismissal should be with or without prejudice, because that's what we're really talking about here. Yeah, that's my second question. And the judge decided to dismiss without prejudice. Right. What's the prejudice? Well, first of all, in order for there to be an assessment of the prejudice, you need to determine what the length of the violation is. And there wasn't a clear determination of what the length of the violation was. Answer the government's argument. I think it's page 24 of their answering brief where they say, look, if the district court had counted every single day instead of stopping at 120, if the court had counted every single day, there wouldn't be any change in the statutory factors to be addressed. The case would just have been as serious as it was before. That would have remained unchanged. The delay wouldn't have been any more attributable to ill motive by the government. And the alleged prejudice to the defendant would be unchanged. It would be the exact same. Now, answer that argument they've made about those three statutory factors. Well, first of all, the Supreme Court has said that the length of the delay, the longer it is, the more likely it is there's going to be prejudice. And there's two kinds of prejudice. There's actual trial prejudice, and then there's non-trial prejudice. And the district court here didn't consider the possibility of non-trial prejudice. What's the prejudice? The prejudice is three years. Tell us what it is. You've got to stop for a second. Because even though this is an artificial thing, Mr. Kovlenek, if we're talking over each other, it doesn't work. In an ordinary conversation, I wouldn't be so rude as to interrupt, but this is an ordinary conversation. I hope you'll forgive me. Point to the prejudice. The prejudice is three-plus years in Lackawanna County Jail awaiting the disposition of his trial. That's not the prejudice that this is, those three statutory factors are directing us to when deciding whether or not to dismiss with prejudice, is it? No, but the prejudice that is one of the other considerations, it's the seriousness of the offense, the facts and circumstances, and the effect on the administration of justice. The district judge here did not assess the, first of all, did not make a full finding of what the facts and circumstances were. Second of all, even if he had, he never considered anything beyond whether the government acted intentionally. Didn't consider whether this was a pattern, whether there was a history of neglect and inattention to the application and enforcement of the Speedy Trial Act. Is that something that the court is required to look at when measuring whether the Speedy Trial violation with respect to this defendant warrants dismissal with or without prejudice? It is. It's one of the facts and circumstances, and it goes to the assessment of what the effect on the administration of justice would be. It's one thing for, as the courts have said, for it to be an inadvertent mistake, an oversight, an incidental one-off sort of circumstance. It's another thing if it's a series of events that involve overlooking the requirements of the Speedy Trial Act, treating it as if it's just an inconvenience rather than something that actually affects both the defendant's rights but also the interests of the public in securing a speedy trial. That's an argument that's aimed at the district court, not at the prosecution, right? Your assertion appears to be, correct me if I'm wrong, your assertion appears to be that the district court here repeatedly allows the government to violate the Speedy Trial Act. The district court is derelict in its duty as a matter of systemic incompetence or something. No, no. What I'm saying is I understand how difficult it is to manage some of these cases and how important it is to pay attention to the Speedy Trial Act, not just for the court, but the court relies on the government to be an arm of its enforcement and to help it stay within the lines. And the government didn't do that once here. They dropped the ball repeatedly. And it's that, and then even at the end when the judge dismissed the case, the government asked for a three- or four-day continuance so that they didn't have to bother to go to the magistrate judge with a complaint to keep them in jail. I just think that reflects an attitude of inattention and a lack of seriousness with respect to how this act is supposed to be treated and enforced. Can I get you to shift gears since we're in the last little bit here? You've made objections to certain sentencing enhancements. Yes, Your Honor. I'd like to give you a chance to talk about those, and in particular that four-level enhancement where the district court said this is not a close call. It involves five or more individuals in a rather extensive drug-dealing operation. You've taken issue with that. Can you help us understand why you think it's not just a close call, it's so clearly in your client's favor that we would say that enhancement, that's an error? Because that analysis particularly is applied to a case like this where the government uses federal conspiracy law or accomplice law to collect a disparate group of loosely connected people, some of whom have never met each other, some of whom have intimate relationships with each other, to say, well, now you've got five or more, so that's extensive, and that answers the question. The question is what can the district judge reasonably infer? We've got deferential review of the fact-finding. District judge looks at this and sees there's a ledger, there's a bunch of people owed, he set up a stash house, he's sending a courier. Does that suggest what the business people call vertical integration to one organization, or does that suggest a bunch of free agents just kind of contracting ad hoc? The district court thought it was obvious the way the drug-dealing works, this is one organization. You suggest it's not at all obvious. Talk to us about why we shouldn't defer to that reading of the facts. Because the testimony in this case was that all of these people were dealing drugs through other suppliers. Truman Jones was one of their suppliers. He sometimes supplied them good drugs, sometimes he supplied them bad drugs. He collected money that was owed to him as part of those sales. In the meantime, he's not telling them who to distribute to. He's not telling them to be out in that corner or to go to this block or go to these people. He's not using them. That doesn't require micromanagement. As long as there's some control, that's enough. But the only control is selling. He's just selling drugs to them so that they can either use it themselves in some instances or sell it to other people. And he's not recruiting them. They're coming to him. He's not controlling their buys. He's not controlling the distribution further. There's not a- Let's explore that for a second. The government's argument in response to that is that Jones secured and maintained the stash house, that Jones, that that was the central- He wasn't just a guy amongst guys. He was a central guy who set up the place for the stash house, who directed the sale of narcotics, who, particularly on that, what was it, February 9 date, was directing people to do things, and that the language of the text messages, which the court had focused on, was such that the court inferred that's directorial behavior. That's not just a guy among guys. So answer, if you would, those specific points that the government points to in support of the district court's- So the testimony was on the February 9 transaction that the woman came back unexpectedly to retrieve her cell phone, and he asked her to drop something off on her way out of town. The testimony is clear. She was asked a number of times, and she says she was asked. Another witness was asked, was she directed? And their testimony was, I don't remember. So that's on that issue. With respect to the stash house, that's where he was living. At the suggestion of others, and as he indicated in his 45-minute post-arrest confession, he had moved there to get away from his son, who was giving him all kinds of trouble. When the investigation started, he was at the Meade Street address. They got a search warrant for the Meade Street address and left that at the wrong place. He moved. That's where he was living. The testimony was that's where he was living. Not in Meade Street. You mean Charles Street. On Charles Street. He had moved to Charles Street by then. And they corrected the warrant the night before. You can certainly argue, as you did, no doubt, in front of the district court, too, that you could look at this evidence in a different way. But is it an abuse of discretion at that level of standard of review for the district court to look at those facts and not say, hey, it was a guy who was trying to get away from a troublesome child or something like that, and say, no, this is a guy who's setting up a drug operation. He's getting a stash house, and he's operating out of it, and he's sending text messages. He's telling people to go here and there, keeping a ledger, checking it twice. Is it an abuse of discretion? I guess I keep coming back to that. If there was testimony that he went out and got the Charles Street address and used it as a stash house, what is typically regarded as a place that is just used to use and package drugs, that would be one thing. But there wasn't any testimony to that effect. And that's why I think it was an abuse of discretion. Thank you. We'll get you back on rebuttal. Ms. Martin. While you're coming up, we'll just let you know that we'll probably be focusing on two issues, one, the Speedy Trial Act and also the four-level enhancement, not the other enhancement and not the Sixth Amendment issue. Thank you, Your Honor. Good afternoon. Allison Martin on behalf of the United States. Can I just get some factual information, if I can? What day do you think the Speedy Trial Clock began to run? Your Honor, at this stage, I would agree with appellant counsel that the Speedy Trial Act began to run on June 15, 2016, when the last co-defendant was arraigned. And how many non-excludable days did you ultimately come up with? I would also, at this stage, for argument's sake, agree with defense counsel that it was 177 days. As far as what occurred prior to the May 2017 counting, I would take issue with the additional time that defense counsel or appellant counsel asked this court to consider. Who references that in the defense brief? I believe that in a footnote argues that the court should consider all 318, but concedes 177 as prior to December of 2018. Okay. And do you have any understanding or suggestion as to why Jones's severance motion was never decided? Your Honor, I was not trial counsel in this case, so unfortunately I don't have the same insight that Mr. Consiglio has as to how his particular case advanced. But in reviewing the appendix and in reviewing the docket, in this case, I would point out to the court that they were, in fact, different individuals at issue in the severance motion, specifically with respect to Truman Jones. Co-defendant Al Dunlap was a problematic figure for Mr. Jones, based on my reading of his pleadings before the district court. That individual, Mr. Dunlap, ultimately, he did not enter a guilty plea until May 3rd, 2019, before the district court, at which point the severance issue then, as to Truman Jones, had become moot. So that distinguishes him from the co-defendant whose severance motion was decided in December of 2018 and gives credence to the court's interpretation that the defendant was asking for time to provide material facts. Does it matter who that request came from if, in fact, the district court did not take the step of making the finding required to be put on the record with respect to the Speed Trial Act? I would state that perhaps, under the hypothetical that you raised, it would not matter, but I don't see the record before this court as in line with that question. Specifically, the district court judge did, in his memorandum opinion later in the summer, I believe filed in August, speak to Henderson and post-trial briefing and waiting on material facts when he concluded that it was approximately 170 days as part of the Speedy Trial Violation. How do you get around Zednar and Reese? Those cases indicate that you don't get to do some sort of advance waiver or something like that, correct? Absolutely. Zednar says you can't prospectively waive the Speedy Trial Act. But that, Your Honor, is one I would also point back to when it comes to what happened in this case and what the defense attorney asked for in this case. It wasn't nonspecific prospective waiver, just don't worry about the Speedy Trial Act. It was, I filed a specific motion. I'm asking for the opportunity to provide additional facts, and I'm asking you to hold it in severance. The district court in its memorandum opinion states that that time would be excludable awaiting that sort of post-trial briefing, awaiting those material facts that the defense specifically asked for. The defense did specifically ask for it, but I want you to come to grips with what the defense has said, which is if you allow a district court not to make the finding that the Speedy Trial Act requires, and there's no dispute here that the district court didn't make that finding under the Speedy Trial Act that this is excludable because it's in the interest, et cetera, et cetera. Correct? I would agree that it wasn't decided, and there is no record, as to in the interest of justice, dating back to perhaps the January order. However, I would state in this record based on the defendant's request to dismiss the second indictment where he removed his arguments from the first indictment that was dismissed, that is where the district court explained itself as far as this abeyance went, and that is where the district court stated it was Henderson that allowed for the exclusion of those particular days from January until May of 2019. I'm struggling with it a little bit. Maybe you could explain to us how it is that Henderson allows this and doesn't leave us looking at this in the same way that the defense counsel is urging on us. That is that if you let this happen, you're just doing what Zednar said you can't do. You're just allowing somebody to say, hold this in abeyance, please, and the district court say, okay, and that's nothing more or less than a breach is not legal. How does Henderson make that not so? I would state because Henderson specifically states that district courts often find it impossible to resolve motions on which hearings have been held until the parties have submitted post-hearing briefs or additional factual materials. This is a case where the defendant, the defense attorney, stated to the court that he would like the opportunity to add additional material facts to the record. That is clear on the record. Maybe I'm making a mountain out of a mole here, but I get the sense that you're saying, this is all good. There really wasn't the violation of the Speedy Trial Act. Henderson is making it all okay. But you're not saying that, are you? No, absolutely not, Your Honor, because I'm conceding 177 days of non-excludable time occurred. The date in question, the concern that takes place in my understanding of the appellant's argument is that the big problem here is that 177 days, the court considering 170 days, it doesn't do justice to the Speedy Trial Act because this is 318 non-excludable days. And what I'm stating is that, no, it was 177. And so when the district court judge said it was approximately 170 days, at the initial hearing stated he got to 125, there isn't some undermines the district court's ability to properly analyze the appropriate concerns as far as dismissal with or without prejudice. Did I misread your argument, though, in your brief that it really doesn't matter how many days there were here because the three statutory factors remained unchanged? Maybe I misunderstood what you were saying. It sounded like what you said is anything above 70, who cares? I thought in your briefing, your assertion was crime would be just as serious, government would be just as innocent of the delay, and there's no discernible prejudice here. Did I misunderstand that, or are we fighting on that third prong about what really is the prejudice and how to assess it? I think the third prong is the one that's most I would understand why this court would focus on the third prong, and I would state I would also focus on the third prong. And I am certainly not advocating for a blanket rule that the amount of time and the amount of non-excludable days should not come into the mind of the district court. I think those are appropriate factors to consider. I would state in this case even if it was 318 days, because of the nature of this case, it would not, there's no record that would imply it would make a difference under those three factors. So, I submit that it's sort of a two-part argument. I don't think there was a substantial undercount of the non-excludable days in this case. I don't think it was clear error that the court misinterpreted that abeyance as falling under Henderson appropriately and distinguishable from Zedner, as the appellant argues. But I'd also state that because of the specific facts of this case, because you have multiple co-defendants, because you have a semi-chaotic docket, because you have the lengthy delays over the course of the entirety of the litigation that took place up until May of 2019, that specific to this case, it ultimately would not make a difference. It would not be an abuse of discretion for the judge, even counting 318 days, not to dismiss the case of Henderson. What if it wasn't 318? What if it was 1,000? Would that make a difference in your view? What was that, Your Honor? What if it was 1,000 instead of 318 or 177? It would potentially make a difference depending on how it impacted the particular three factors. The seriousness of the offense would always likely remain the same depending on what the indictment charged. However, it would change the facts and circumstances of the case, and it would, I would think, provide the opportunity for the defendant to create a record of actual prejudice if it was 1,000 days rather than 177. Let's shift gears if we can and talk about the four-level enhancement for being either an organizer or leader. Could you address that? Yes. I would state that the organizer-leader enhancement in this case, it was appropriate in that the sentencing judge, which was a different district court judge, appropriately evaluated the facts as presented to him. Well, that's a conclusion, but what makes you think that Jones acted as a leader or organizer? Well, specifically highlighted to the district court were, as you all have recounted, the maintenance of a particular ledger. That establishes that he is ultimately in charge of money and collecting the money. Let's talk about that. We don't have the ledger itself on the record. All we've got is this government closing argument refers back to this testimony of this woman, Victoria Cranach, had seen an old sheet had a list of people's initials with amounts next to them on how much people owed them, anywhere between $300, $1,200 a person. It's a shifting number. Why does the fact that someone keeps a list of the money owed not just show that he's a maybe he's a wholesaler, maybe he's a distributor, but that doesn't necessarily imply control. Your friend on the other side says maybe it's just loose. I do deal. I buy from this person. Now I buy from a different person. It doesn't have to be control. That would be perhaps a reasonable interpretation of that specific fact, the ledger itself, but I would turn the court's attention specifically to where the district court turned, which was a text message sent by Mr. Jones to a co-defendant where he highlighted, and for your information, everyone who owes me been paying me toward my debt. Dolo gave me $300 the other day. Pudi pays toward his debt. Ali left town. The fact that in conjunction with the ledger, this defendant exercising both monetary concerns as to the success or failure of the drug trafficking business more generally, and then specifically directing a co-defendant to provide that money back to him shows a particular level of control over that individual and was reasonable then for the district court to understand the particular role he played with money as an aspect of being a leader. Why doesn't it show control? Why doesn't it just show what any person who's owed money does? It says, give me the money. I don't control you, but you owe me money, and I want money. Where's the logical inference from other people have paid me what they owe me. Now you pay me what you owe me. Because again, he's indicating that multiple people, multiple co-defendants, multiple sellers of narcotics owe him money that he's keeping track of. He's sending a text message which can certainly be reasonably seen as somewhat threatening in the way that it's sent. Well, the district court is also confronted with the fact that he's the one who has obtained firearms for this particular stash location. That he's the one who has actually gone about renting this particular location where the drugs are being distributed from. That he is the one who has sent particular couriers on particular dates. So all of those indicators I think lead the court reasonably to conclude that it's an appropriate enhancement. I would also state that it doesn't undermine the enhancement of this particular enhancement and a defendant being a leader within a particular conspiracy just because other drug dealers also engage in other conspiracies. That doesn't undermine the reality in front of the district court in this case with this particular indictment, this particular conspiracy, and this particular organization. Just because a co-defendant also goes to someone else as a supplier when Mr. Jones is unavailable, it doesn't undermine this particular conclusion made by the sentencing judge. Thank you very much. Appreciate it. Mr. Coughlin. Thank you, Your Honor. Very briefly, if I could just touch on the leadership role adjustment for a moment. The text message might have reflected that he wanted control, but as the recipient of that message testified, she didn't always pay him. She didn't respond to his demands. She was making demands on him because he was giving her bad drugs and she was losing customers. And so whatever suggestion that it carried with it that he wanted control, the fact is and the record is that he wasn't exercising control. Was there any evidence that he was, in effect, responding to the instructions of some other person? Not that I'm aware of. Okay. Turning to the amount of time and the prejudice analysis, the facts and circumstances require an accurate determination of the amount of time that elapsed. The government, in its response to the renewed motion after the second indictment was returned, conceded that the 42 days between the issuance of the court's opinion on December 12th and the January 23rd 2019 scheduling order were excludable. They relied on the scheduling order that contained a reference to the Speedy Trial Act. There were never any specific findings, no findings of facts, nothing that Taylor requires, nothing that this court has required district courts to do when excluding time under the Act. The district court didn't rely on that order. What about the assertion that once you got, once the court said, okay, there's about 170 that's wrong and there's a violation here. What about the government's argument that now we're in Henderson land, we're not in ZNR territory? Can you Your Honor, Henderson anticipates a and talks about the different kinds of motions that courts are confronted with and that some require evidentiary hearings, other require prompt disposition. There's a spectrum of, and that there might be instances where additional fact-finding might be required. This is a severance motion in a drug case that the lead But it's your client's motion saying and specifically saying, I need you to hold off on this because I'm developing information pertinent to this. I'm getting the record evidence together to support this and the court saying, okay, I'll do that for you. This is I guess that kind of circumstance where we need to take time because you want the time. But there was never anything ever filed. There was never any follow-up. And I'd point the court to the decisions in Bryant and Stevens from the D.C. Circuit and the Fifth Circuit where similar circumstances arose. And you can't just have something pending on the record as if it's a motion that stops the clock because that's an end run around Henderson, around ZNR and around Bloat and that's what the procedural strictness that's required. And the government is in a position to help the court and at that point, when it later conceded that the abeyance was not effective, when that happened, it was their responsibility to say, wait a minute, Judge, that's not how the Speedy Trial Act works. We can't do it this way. I thought ZNR was pretty specific in saying the Speedy Trial Act puts the onus on the defendant. The defendant is the one that's got the responsibility to come forward and monitor and help police that, no? No, not in terms of policing the act. In terms of identifying a violation of the act and taking advantage of it. But the... Not after the fact. Do you think when the Supreme Court said instead of granting broad opt-out rights, 3162 A2 serves two unrelated purposes. First, assigns the role of providing violations of the act to defendants for the obvious reasons they have the greatest incentive to perform the task. And second, requiring a defendant move before trial starts or guilty presented, etc., etc. In other words, both those things are saying, look, the defendant's got the incentive. The defendant should be the one responsible for making sure that the court is apprised, hey, we may have a problem. And I'm not saying you did this, but the language of the Supreme Court seems to say, we don't want defendant sandbagging the court. You guys pointed out, you guys make your motions about the Speedy Trial Act. Isn't that the message that Zednar is giving? No, I think the message that Zednar is giving is the court and the government have an obligation to monitor the application of the act. The defendant who's got the interest, something to gain by identifying a violation can do so and has an incentive to do so. But that's not the same as attending to the details and looking out for the public interest that has to be served also by the act, not just the interest of the defendant, because they recognize that defendants might want continuances and delay and there might be some benefit to that. So they put that responsibility on the government and the court and the responsibility for identifying the violation and whether or not they want to try to take advantage of that is on the defendant. If you're in a place where it's routinely the practice that no matter how long the violation is, it's going to be a dismissal without prejudice, then lawyers are going to tell their clients it's not worth trying to enforce this act because all we're doing is spinning our time. So you don't even uncover all of the extent of the practice that might be occurring. But second to that is the defendant has to make an assessment then whether, you know, it's a weak violation. It's something didn't get filed on time. There really was a mistake. It's inadvertent. Is it really worth our time to move for dismissal? And that's where the interest of the defendant comes in. But in terms of the obligation of the government and the court to monitor the application of the law and to make sure that it's being, of the act and make sure that it's being applied correctly in the circumstances of the case, that's on the government and the court. And I think that's a different, just a different point. Thank you. Thank you very much. Thank you to both counsel for well presented arguments and we'll take the matter under